# SECOND DISTRICT, 1896.

### WESTERN UNION TELEGRAPH CO. v. R. GOSSETT.

Delivered December 11, 1896.

**1    Telegraph Company—Failure to Deliver Message—Sufficient Petition.**
A petition in an action for damages for failure to deliver a telegram, alleging that plaintiff, who was in jail, had arranged with his wife, upon her receiving a message from him, to have his father indemnify sureties on his bail bond, and that his father was ready, willing and able to do so, and the sureties were willing to sign his bond upon being indemnified, was sufficient to sustain the action.

**2.    Same—Contents of Message as Notice to Company.**
A telegram reading: "Come at once. Bring father to secure my bond,"—shows by its terms its importance and the necessity for prompt delivery; and shows enough to put the telegraph company to which it was delivered upon inquiry as to whether the sender was then in jail.

**3.    Same—Failure to Deliver Message—Damages Not Excessive.**
A verdict for $500 damages against a telegraph company for failure to deliver a message is not excessive, where it appears that on account of the failure to deliver it plaintiff was detained in a loathsome, filthy prison five days longer than he would have been if it had been promptly delivered.

APPEAL from Cooke.   Tried before Hon. D. E. BARRETT.

*Wilkins & Vinson*, for appellant.—There being no allegation in plaintiff's petition that he had an agreement or understanding with his father to aid in making his bond, or with Davenport and Hyden that they would go on his bond, his petition showed no cause of action. Telegraph Co. v. Linn, 26 S. W. Rep., 490; Telegraph Co. v. Motley, 27 S. W. Rep., 52; Telegraph Co. v. Smith, 76 Texas, 253; Telegraph Co. v. Gidcumb, 28 S. W. Rep., 799; Telegraph Co. v. Grocer Co., 28 S. W. Rep., 905; Telegraph Co. v. Brown, 84 Texas, 54; Express Co. v. Darnell, 62 Texas, 639.

*Green & Culp*, for appellee.—The telegram on its face indicated its importance.   Telegraph Co. v. Sheffield, 71 Texas, 570; Telegraph Co. v. Brown, 58 Texas, 170; Telegraph Co. v. Edsall, 63 Texas, 668; Gray on Communications by Telegraph, sec. 86; Daniel v. Telegraph Co., 61 Texas, 457.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by appellee against the appellant for damages for failing to deliver the following message: "September 9, 1893.   To Dora Gossett, Gainesville.   Come at once.   Bring father to secure my bond.   (Signed) R. Gossett."   It was delivered to appellant's agent and operator at Ardmore, Indian Territory, by Frazier, who was at the time a guard of the United States

jail at that place, and was known to defendant's agents at Ardmore to be such. Frazier wrote and delivered the message to appellant as agent of appellee, and paid the price of transmission out of appellee's money. He was in charge of the jail and of appellee at the time it was sent. The message was a full rate message, and was transmitted over the wire to Gainesville at 7:02 p. m. of that day, and was received by appellant's operator at Gainesville at 7:06 p. m., and immediately handed to one of its messenger boys, to be delivered to Dora Gossett. The boy returned with it to the appellant's office, and reported that Dora Gossett lived one and a half miles distant in the country; when a service message was sent to Ardmore at 7:52, notifying the Ardmore office that the message had been received but not delivered; that Dora Gossett lived a mile and a half in the country. This service message was received at Ardmore at 7:52 p. m. of the 9th, and the agent told Frazier of it about 10 o'clock next morning.

The Gainesville operator, upon being informed by the messenger boy that Dora Gossett lived in the country, at once prepared a notice addressed to her, and enveloped and stamped it and delivered it to the messenger boy to place in the postoffice, but Dora Gossett never received the notice. It is doubtful if the boy ever mailed it. Dora Gossett was the wife of R. Gossett, and resided at the date of the message within the corporate limits of Gainesville, and within less than a half mile of appellant's office, within the free delivery limits, and by proper inquiry she could have been found and the message delivered to her that night.

R. Gossett was confined in the United States jail at Ardmore, a loathsome, filthy prison, the Commissioner having fixed his bail at $300. If the message had been delivered on the evening of the 9th, his wife and father could and would have taken a train at Gainesville at 10:30 p. m., and arrived at Ardmore at 12 o'clock, midnight, both towns being on the Gulf, Colorado and Santa Fe Railway and only about forty miles apart. If it had been delivered next morning, they could and would have taken a train at 10:30 a. m., and would have arrived at Ardmore at noon on the 10th of September. The message was not delivered to Dora Gossett until the 14th of September, and then only when Dora Gossett asked at appellant's office whether there was any message for her.

Prior to the 9th of September Dora Gossett had visited her husband in the jail, and it was arranged that when he could find any one to sign his bail bond he would telegraph her, and she was to bring his father to Ardmore to indemnify such sureties. Of this arrangement the father had been notified, and he had agreed to it and was ready, able and willing to indemnify any sureties who would sign his son's bail bond, the law requiring that such sureties should reside in the Indian Territory.

Appellee receiving no answer to the message sent his wife, on the 11th of September procured J. C. Davenport, a merchant of Ardmore who had lived at Gainesville and knew appellee and his father, to write

his father on the subject. Said letter was received by the father on the 13th of September, and on same day he went to a lawyer in Gainesville and gave a mortgage on real estate worth $1000 to Davenport to secure him against loss as surety on the bail bond. Davenport received this mortgage on the 14th, and on the 15th of September signed the bail bond and appellee was released from jail. If the father had gone to Ardmore on the 9th or 10th, and offered the security to Davenport as indemnity which he gave later, Davenport would have made appellee's bail bond at that time, and appellee would have then been released.

The father of appellee had resided in Cooke County for 42 years, and in Gainesville on one of the principal streets of the city for 24 years, and within four blocks of appellant's office. He was well known in the city, as was also his place of residence, and he knew on the 9th of September where Dora Gossett lived, and inquiry of him would have doubtless resulted in the delivery of the message to her on that evening. The only effort made to deliver the message was between 7:06 and 7:52 o'clock p. m. of September 9th. The operator at Gainesville testified that when the message was returned to her at 7:52 by the messenger boy she hung it on the hook, where it remained until it was called for by Dora Gossett. The messenger boy's evidence, to the effect that he made inquiry of one Mrs. Gossett, who told him that Dora lived at Macafees, one and a half miles in the country, is contradicted by Guy Gossett, her son, who testified that the messenger came to his father's house and inquired of him, not his mother, where Dora Gossett lived, and that he told him she lived in the south part of town, and pointed down in the direction of her residence; that neither he nor his mother told him she lived in the country.

The failure to deliver the message to Dora Gossett on the 9th of September was the result of culpable negligence on the part of appellant's agents at Gainesville. The $500 damages awarded by the jury are not excessive.

It is urged by appellant that neither the petition nor the evidence shows, at the time the message was sent, that appellee had any agreement with Davenport and Hyden, the sureties on the bail bond, that they would sign the bond and secure his release, and that therefore the object to be accomplished by the message was entirely problematical, speculative and uncertain, and too remote and uncertain to sustain an action for damages for negligent delay in delivering it.

The petition alleges that appellee had prior to the sending of the message arranged with his wife, Dora, upon her receiving a message from him, to have his father, T. R. Gossett, come to Ardmore and indemnify sureties who might sign his bond upon receiving such indemnity; that his wife was ready, willing and anxious to aid him in obtaining the bond, and his father was then and there ready, willing and able to indemnify whoever might sign his bond as sureties, whenever notified that his services were so needed; that James Davenport and Whit Hyden, two resident citizens of Ardmore, were then and there

able, ready, competent and willing to sign his bail bond, upon being indemnified by his father, T. R. Gossett, against any loss which they might sustain by reason thereof, and that they could and would have done so upon being so indemnified, and his release from prison would have been thereby secured on the 9th or 10th of September.

We think these allegations are sufficient to sustain the action, and the general and special exceptions were therefore properly overruled.

Allegations of the petition were excepted to specially, because in one instance the telegram copied in the petition failed to show on its face that plaintiff was in jail, and it was not averred that notice was given the agent at Ardmore that the sender was in jail; and in the other instance an allegation was excepted to as being irrelevant and immaterial, which averred that prior to the time of filing the message in question with appellant's agent at Ardmore, its agents there had delivered messages to plaintiff in jail and therefore knew of his confinement; and a bill of exception was reserved to the court's action in admitting evidence to prove the latter allegation.

The legal proposition asserted under these assignments is as follows: "Appellant could only be bound by information imparted to or acquired by its agents while transacting for defendant the particular business of receiving, transmitting and delivering the message in question."

We are inclined to the opinion that this proposition is correct in the main (Telegraph Co. v. Moore, 76 Texas, 66; Telegraph Co. v. Kirkpatrick, Id., 217; Taylor v. Taylor, 29 S. W. Rep., 1057); but we deem it unnecessary to decide it, as we hold that the message, which was set out in the petition, showed by its terms its importance and the necessity for prompt delivery; and if it did not show in terms that the sender was then confined in jail, it showed enough in that direction to make it the duty of appellant's agents to inquire whether such was the case, if they regarded it important to know, as in any manner affecting the company's liability for negligently failing to deliver it.

The other assignments of error are all overruled, as nearly all of them are predicated upon the idea that the message by its terms did not give notice to the appellant's agents of the conditions under which it was sent, and of the importance of prompt delivery. Those complaining of the court's charge, and of his action in refusing charges, are not well taken.

The evidence is amply sufficient to sustain the verdict, and we have found as a fact that it was not excessive; and we therefore conclude that the judgment ought in all things to be affirmed, and order accordingly.

*Affirmed.*